CRICHTON, J.,
additionally concurs and assigns reasons.
hi wholeheartedly agree with the per curiam and specifically, this Court’s charting of this ground-breaking area of law. By virtue of the United States Supreme Court decision in this case and the inaction of the Louisiana legislature, this Court is compelled to fashion guidelines and parameters to guide district judges as" they grapple with the multi-faceted issues in making determinations' on which convicted murderers" are entitled to future parole eligibility and which ones are not.
At the outset, I want to make perfectly clear that, until there is further action taken by the Legislature or further developments in the United States -Supreme Court, the district courts are= faced with one and only one task here: to distinguish between “the rare juvenile offender whose crime reflects irreparable corruption” and “the juvenile offender whose crime reflects unfortunate yet transient immaturity”. *610 See Miller v. Alabama, 567 U.S. -, -, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012). The former may- be denied parole eligibility while the latter must be afforded it. Furthermore, for those inmates who fall within the latter category, the Legislature has determined that they will be eligible for parole only when the conditions provided in La.R.S. 15:574.4(E) are satisfied. Absent a determination that this law is unconstitutional, it must be applied.' Eligibility vel non is the sole question to be answered in. a Miller hearing. If parole eligibility is |2not denied by the district court, future prospects for parole will depend on the prerequisites of La. R.S. 15:574.4(E) and on the ultimate determinations of the Parole Board.
There is no doubt many of the hundreds of homicide cases at issue have been final for years, perhaps decades — or in the instant case, for more than five decades. Therefore, it is important to utilize all of the tools available in providing a “meaningful opportunity” for each defendant “to obtain release based on demonstrated maturity and rehabilitation.” Miller, 132 S.Ct. at 2469. As stated by the per cu-riam, those tools include reference to the illustrative guidelines set forth by La.Code Crim. Proc. 878.1, as well as “other factors as the court may deem relevant,” all which have been successfully applied in on-going cases. Further, the guidelines of La.Code Crim. Proc. 894.1 and the factors set forth by Fla. Stat. Sec. 921.1401(2)(2014) may prove worthwhile.
In many ways, the inquiry posited by Miller presumes a youthful offender and asks a district court judge to predict what may occur in the course of a future incarceration. But because Henry Montgomery and hundreds of inmates like him have been in the custody of the Department of Corrections for many years — some for decades — it is my view that, in addition to guidance from these statutes, the inquiry should also focus on whether the' inmate has engaged in serious misconduct or committed criminal offenses while in the custodial environment. Certainly, if an inmate commits serious misbehavior, as evidenced by his or her DOC disciplinary record, it is reasonable for a judge to infer that he or she is a higher risk and will likely engage in misbehavior in the event of release on parole. It is also important to give particular consideration to the factors under 15:574.4, specifically regarding education and job training. If the inmate has made little to no, effort in that respect, there may be a concern regarding the inmate’s ability to safely reenter society. Finally, in my view, whether an inmate has a family support | Ssystem in place, or a plan on parole, should play a prominent role in the court’s serious determination of parole eligibility. Such an examination of the inmate’s disciplinary record while incarcerated certainly would not preclude a later re-examination by the parole board (if parole eligibility is granted). More specifically, if a court has reviewed an inmate’s DOC record and makes its determination the inmate should be parole eligible based on the inmate’s efforts towards rehabilitation, this does not thereafter limit the parole board’s ability to review the same.
It is an unfortunate truth that there will certainly be some inmates that demonstrate irretrievable depravity, that have set forth zero effort towards rehabilitation and redemption, and are simply not ready for a parole eligible adjudication. On the other hand, there will be some who were the victims of their own once transient immaturity and regrettable impulsivity, long since passed, that present the lowest risk designation based on their rehabilitative progress through the years. Whatever the result may be, all such inmates that committed homicide when they were juveniles are entitled to a “meaningful oppor *611 tunity to obtain release” based on “demonstrated maturity and rehabilitation” as required by Miller, 132 S.Ct. at 2469 (quoting Graham v. Florida, 560 U.S. 48, 74, 130 S.Ct. 2011, 2030, 176 L.Ed.2d 825 (2010)).
Finally, I emphasize the paramount importance of district courts establishing a solid and thorough record in not only this case, but also the other several hundred post-conviction cases that will be addressed in the near future. In doing so, the district court’s record should also include an assignment of reasons as to why the trial judge has either declared or denied parole eligibility, so that the appellate courts will have the ability to further examine and develop this new and important area of law.